## HENRY GREGORY, Respondent, *v.* PETER FROTH-INGHAM et al., Appellants.

In appeals from orders granting or refusing a new trial, a statement on *appeal* is not necessary.

This Court, without such statement, will consider "the *statement on motion for new trial,* the pleadings, depositions, documentary evidence on file and minutes of the Court."

The declarations of a partner or part owner in a mill which is building, who deeds his interest in the real estate to his partner, but continues in possession, controlling the property just as before the deed was made, may be taken in connection with his continued possession and control of business to show his continued interest in the property.

The declarations of a vendor made before the sale of his intention to make a transfer to delay his creditors, will be taken as evidence of *his* intention in making a sale, but a knowledge of that intention must be brought home to the vendee to avoid the sale.

When the verdict of a jury contains surplus matter, the Court ought not, for that reason, to set it aside and grant a new trial, unless it appears from that surplus matter that the jury based their verdict on absurd reasoning or false premises,

APPEAL from the Second Judicial District of the State of Nevada, Ormsby County, Hon. S. H. WRIGHT presiding.

*Baldwin & Hillyer* and the Attorney General, *Geo. A. Nourse*, Counsel for Appellants.

*Clayton & Clarke*, Counsel for Respondent.

Appellants made the following points :

*First*—No grounds for granting a new trial can be considered in this case, except that of "insufficiency of evidence to justify the verdict." 1st. Because there is a statement on appeal by the appellants. No amendments were offered to this statement, and by statute it became in such case *the statement* without any settlement or certificate of the Judge. 2d. The statement shows nothing of what occured on the trial except the evidence. 3d. All affidavits and rulings of the Court below must be excluded from the consideration of this Court, not being mentioned in the statement on appeal or referred to therein. The points that the verdict is against law and errors in law occurring at the trial, cannot be considered, unless they are shown by the judgment roll, which is not contended. (1 Cal. 364; 13 Cal. 44; 14 Cal. 38; 16 Cal. 185.)

*Second*—The order granting a new trial should be set aside for the following reasons: 1st. This Court should view the case as an original application for new trial. The case was heard in the Court below by one Judge and a new trial granted by another. This Court has the same opportunity to judge of the weight of evidence which the Judge had who granted the new trial. He did not have the advantage of hearing the witnesses or witnessing personally the progress of the trial, therefore the strongest reasons for giving weight to his judgment are wanting in this case. In such case the presumptions of law favor the jury rather than the judgment of the Court. (3 Graham & Waterman on New Trials, 1213–1218–1227; 5 Mass. 533; 4 Georgia, 428; 1 Bell, N. P. 327; 6 Bacon's Abr. 663; 2 Mod. 199; 12 Cal. 27 and 48.) 2d. The verdict of the jury was a general verdict, and the surplusage will be rejected. (4 Yates, 442; 17 S. & R. 297; 11 Mass. 350.) There is no

rule of law requiring a jury to give a good reason for what they do.

*Third*—The testimony showed beyond a doubt that whilst the deed from McFarland to Gregory was between the parties only intended as a mortgage, it was made a deed absolute on its face for the express purpose of delaying and deceiving creditors. This made the deed absolutely void as to such creditors.

Points made by Respondent:

This appeal should be dismissed, because the statement on appeal was not filed in time. It is not agreed to by the parties or settled by the Court, and the transcript does not contain all the papers used on the motion for new trial.

The order granting a new trial should be sustained, for the following reasons: The Court erred in admitting the declarations of A. J. Sperry. Sperry was the agent of McFarland to conduct business at the mill; not to sell it. His declarations as to title not being within the scope of his authority, were not admissible. (Storey on Agency, secs. 134–5–6; 1 Ohio State Reports, p. 26.)

These declarations being in regard to matters past and ended, could not be received as part of the *res gestae.* (1 Cal. 461; 14 Cal. 37; 1 Greenleaf, secs. 113–14.) His declarations were incompetent for another reason; they contradicted his deed to McFarland. McFarland's title was admitted by the pleadings.

The Court also erred in admitting the declarations of McFarland.

The verdict should have been set aside, because it was a special verdict on a point not raised by the pleadings. Finding the conveyance from McFarland to Gregory a mortgage, negatives the idea of fraud. If it was a fraudulent transaction, it was a void deed. A void instrument cannot be a mortgage or anything else. If it was a mortgage, Gregory was a mortgagee in possession, and should have judgment of restitution. (26 Cal. 426.)

Every presumption should be allowed in favor of the action of the Court below. (3 Cal. 57; 5 Cal. 448; 2 Cal. 177 and 348.)

Opinion by BEATTY, J., full Bench concurring.

This was a suit in the nature of an action of ejectment, to recover the possession of a certain piece of real estate and the improvements thereon, consisting, among other things, of a quartz mill driven by water power. The mill was constructed by a company conducting business under the firm name of Sperry & Co. J. A. Sperry and Thomas McFarland owned between them a half interest in the mill property. N. Shiverich and E. P. Whitmore owned the other half. It does not appear very clearly from the testimony whether Whitmore had an absolute interest in the property, or only a mortgage on the one-half held by Shiverich. When the enterprise was first started, one-half interest in the real estate stood in the name of J. A. Sperry; but it is clearly shown by the testimony that the half of this half interest was held in trust by Sperry for McFarland. Whilst the mill was being constructed, the firm of Sperry & Co. became greatly embarrassed, and indeed utterly insolvent, as was afterwards shown. Whilst the firm was thus embarrassed, Sperry conveyed his half interest—or rather that half interest which appeared by the record of deeds to be his—to Thomas McFarland. McFarland very soon conveyed the same interest to the plaintiff, Henry Gregory. The defendants in this suit being creditors of Sperry & Co., obtained judgment against them. They also became the purchasers of other judgments and claims against Sperry & Co. They finally became the purchasers of the property in dispute under some of the judgments. These judgments were all obtained after the conveyance to Gregory of a half interest in the mill site, etc., by McFarland. The defendants, under their Sheriff's deed, entered into possession of the premises in dispute. The plaintiff brought his suit for possession of an undivided half of the property. The defendants aver that the deed from McFarland was only made to hinder and delay creditors, and was therefore fraudulent and void as against them, they being creditors.

In the judgments had there was no service except on Sperry. The judgments were against him and against the joint property of J. A. Sperry and his associates in the firm of Sperry

& Co. Those associates are alleged to be McFarland, Shiverich and Whitmore.

Upon the trial of the case the plaintiff showed his chain of title from Sperry and McFarland. The defendants introduced evidence to show their judgments, and their purchase and deed of the Sheriff thereunder—to show who were the parties . composing the firm of Sperry & Co., the insolvency of that company, and the illegality of the sale from McFarland to Gregory. The case was submitted to the jury, under the instructions of the Court, who brought in the following verdict : " We, the jury, viewing the deed in the form of a mortgage, find the defendants entitled to recover generally." ·

Upon this verdict a judgment was rendered for the defendants. The plaintiff moved for a new trial, which was granted by the Court below. The defendants appeal from the order granting a new trial, and assign as error that the Court below erred in granting that order. The plaintiff contends that the Court below committed at least three errors in the progress of the trial, which could only be corrected after the discharge of the jury by granting a new trial, and therefore the Court below did not err in so ordering. It was hardly contended in the argument that the evidence in the case would not have justified a verdict for the defendants, or that the Court would have been justified in granting a new trial, if there had been no erroneous rulings as to evidence, and the verdict of the jury had been in the usual form of a general verdict.

The errors in the progress of the trial complained of by respondents are these :

*First*—Admitting the declarations of A. S. Sperry [J. A. Sperry] made against plaintiff and in favor of his own interest.

*Second*—Admitting the declarations of McFarland, made prior to his conveyance to Gregory, evidencing his fraudulent intentions.

The third ground of complaint on the part of respondent is that the verdict found by the jury is contradictory and could not sustain the judgment against the plaintiff. This third ground of complaint, as we have stated it, is not by any means in the language of the respondents, but it clearly shows the point made by them on the argument.

17

The appellants contend that the two first points made by respondent cannot be considered by this Court, because the statements on motion for new trial and on appeal are not such as to bring these points before this Court.

The plaintiff (respondent) in making his statement on motion for new trial, seems to have embodied the evidence of the witnesses therein, but in stating the facts of the case omitted to make any mention of the exceptions taken in the progress of the case, to the rulings of the Court, in admitting and excluding evidence.

Appellants, in their amendments to the statement, asked that the notes of a short-hand reporter, who was employed to report the evidence in the case, should be substituted in the place of the testimony as stated by respondent. The amendment proposed that the reporter's notes of the testimony *only* (thus omitting his notes of the exceptions as taken to the rulings of the Court), should constitute that part of the statement which was amended. The Court settled the statement on motion for new trial, so that it only contained a statement of the testimony and not of the rulings of the Court on the admission and rejection of the testimony. Nevertheless, as appears by the minutes of the Court made during the argument of the motion for new trial, the Court did, in deciding that motion, consider all the exceptions which appeared by the reporter's notes to have been taken during the progress of the trial.

To the ruling of the Court in considering these points of exception appellants excepted.

Much time was consumed on the argument of this case in discussing the question as to whether these exceptions in regard to admission of testimony should have been considered in the Court below, and whether we can, in this Court, consider them as affording any ground for the action of the District Court in deciding this motion for a new trial.

Our Practice Act (section 195) provides what shall be done by the party moving for a new trial. It not only provides for the making and settling of a statement, but further provides that "on the argument reference may also be made to the pleadings, depositions and documen-

Gregory *v.* Frothingham.

tary evidence on file, and to the minutes of the Court." This sentence seems clearly to convey the idea that the matters therein mentioned need not be contained in the statement for new trial. And it appears obvious to us that there is no necessity for those things to be embraced in the statement. The motion is usually heard by the Judge who tries the case. It is usually—or at least, it should ordinarily—be disposed of soon after the trial. The presiding Judge must know what depositions, etc., were used on the trial, the minutes of the Clerk and his own minutes of exceptions, aided by his recollection of what has recently taken place in the trial of the cause, are sufficient to enable the Judge to rule intelligibly on all the points that may arise before him, without the necessity of a formal statement embodying all the exceptions which were taken on the trial. It appears to have been contemplated by the code that the statement *on motion for new trial* should contain only a statement of the grounds on which the moving party intends to rely, and so much of the oral evidence as relates to those grounds.

For the written evidence, rulings of the Court, exceptions, proceedings during the trial, etc., the party is allowed to refer to the pleadings, depositions, exhibits on file, minutes of the Clerk, notes of the Judge as to exceptions, etc.

The 248th section, in regard to appeals, provides that on appeals from a final judgment the appellant shall furnish this Court with copies of the " notice of appeal, the judgment roll and the statement annexed (if there be one), certified by the Clerk to be a correct copy." Whilst on appeals from an order the appellant is only required to furnish a copy of "the notice of appeal, * * * order appealed from, and a copy of the *papers used in the* hearing of the Court below, such copies to be certified by the Clerk to be correct." It would seem, then, that the code does not contemplate a *statement on appeal* when the appeal is from an order sustaining or overruling a motion for a new trial. Consequently a statement on appeal, which should contain only a part of the papers referred to on the motion for new trial, would not preclude us from examining those not contained in or referred to in such statement. When the Clerk certifies that a transcript contains copies of certain

depositions, exhibits, minutes of the Clerk, notes of the Judge, etc., which were used on the hearing of the motion, and they seem to be pertinent to the grounds set forth in the statement for new trial, we will consider them in this Court. A statement on appeal, made by the appellant, and agreed to by the respondent, or even settled by the Judge (on proper notice to respondent), might be a guide to the Clerk in making out the transcript, and might frequently save a heavy expense to the parties and much trouble to the Court by shortening the transcript, omitting some papers entirely, merely giving a short abstract of others, such as deeds, etc., about which there is no question.

But the law does not require or expressly sanction such statement, and when it is made without notice to the respondent it will not exclude him from the use in this Court of any paper referred to in the *argument* in the Court below. In settling such statements, but one common sense rule could be adopted to let into the statement or transcript every document, order of Court, minute of the Clerk, or note of the Judge, which either party might deem material to the protection of the interests of his client. Under such a rule, lawyers will no doubt, in their anxiety to omit nothing that could by possibility be useful to their clients, frequently insert useless matter. But it is better this should happen than that parties should be deprived of the privilege of showing those facts which they and their counsel believe important and essential to protect their rights. We have expressed these opinions about a matter of practice, in the hope that they may serve as a guide to practitioners hereafter in making up transcripts. The principles we have settled here do not, however, remove all the difficulties of this case. The statute provides for a reference " to the minutes of the Court." Do the reporter's notes constitute minutes of the Court? Bouvier defines minutes to be " a memorandum of what takes place in Court, made by authority of the Court." The order made in this case seems to have been to appoint a reporter to take down the evidence. He did, however, take down not only the evidence, but the rulings of the Court in relation to admission and exclusion of evidence and the exceptions of counsel. Whether these notes should,

under such circumstances, be considered as memoranda made by the authority of the Court, and therefore constituting a part of the minutes of the Court, is a question on which this Court is divided in opinion, and upon which it is not necessary at this time to make any ruling.

The first point of respondent is that the Court below erred in the progress of the trial in admitting evidence of the declarations of J. A. Sperry. Assuming for the present that we may look into this alleged error, let us see what was the nature of the evidence, and under what circumstances it was admitted. Sperry, as we have seen, held one-half the property in his name, but as is shown by the most satisfactory and uncontradicted evidence, he held one-half of this half interest for McFarland.

When the company is embarrassed and insolvent he deeds this half to McFarland. After the deed he remains in possession and exercises the same control over the property that he did before, and whilst he was thus in possession exercising control over the property, he made certain declarations about how he held the property, that is, that he held it as part owner with McFarland. The fact that he did continue to occupy it, was in itself a suspicious circumstance. When one sells real estate and retains possession temporarily to gather crops, to remove furniture, or in case of a dwelling house, store, or warehouse, or other property which could be applied to a useful purpose, should even rent it from the vendee, the circumstance might not be very suspicious; but if one sells his entire interest in an unfinished mill, which cannot be applied to any beneficial purpose, and retains possession just as before sale, the circumstance is suspicious. If he retains possession and goes on with the work at the mill, and declares himself still interested, it is very strong evidence of the fact that the sale was only colorable, and we think his declarations in connection with his possession may be received as a part of the res gestæ to show what was the nature of his possession and interest in the property. We think the Court below did not err in admitting the proof for that purpose. This fact in itself did not amount to anything. There was no question before the jury as to fraud or bona fides of the sale from Sperry to McFar-

land; but in making out a chain of circumstances to show fraud in the sale from McFarland to Gregory, it was thought advisable on the part of defendants, to show that up to the time of the sale to Gregory, there was no real change in the interest held by Sperry and McFarland in the property; that at first Sperry held in his name, the interest belonging to himself and McFarland; afterwards McFarland held the same interest in his name, but that the beneficial interest was all the time divided between them. We think this fact was material in the chain of evidence, and we think it was proved in a legitimate manner.

The next complaint in regard to the admission of evidence is that the Judge below should not have permitted defendants to prove the declarations of McFarland that he intended to make and was negotiating a mere colorable sale of the half interest in order to obtain time to meet his liabilities or those of the firm. We think this evidence was properly admitted. To prove fraud you must prove the motives and intentions of two parties. These declarations were legitimate evidence to prove the intentions of McFarland. Gregory's motives had to be proved by other circumstances with which he was connected. As to the rule of admitting the declarations and acts of the vendor made and done before the sale to prove *his* fraudulent intent, see the case of *Landecker* v. *Houtaling,* 7 Cal. p. 392, and authorities there cited.

This leaves for our consideration the question as to how the verdict of the jury should be construed. We think the verdict is a good general verdict, and the words "viewing the deed in the form of a mortgage," are mere surplusage, and do not affect the verdict in any way. Striking out these words the verdict reads: "We, the jury, find the defendants entitled to recover generally." This, though not exactly in the usual form of a verdict for defendants, is certainly a good verdict. Surplusage in a verdict does not vitiate it. If that surplusage showed clearly that the jury had reasoned incorrectly, or that they had come to their conclusion from false premises, then, indeed, would it present to the Court a strong reason for setting aside the verdict. But even then, if it was apparent beyond all question that the verdict was itself right, though the reasoning on which it was based was absurd, we should doubt extremely

the propriety of granting a new trial. It is generally satisfactory to a Court when a jury finds a correct verdict.

If they were in all cases required to give a good reason for their action, it would, we fear, lead to many new trials and endless litigation. In this case the evidence is very strong in support of the verdict found by the jury. As to the language used by the jury in attempting to explain their verdict, literally construed, it is nonsense. They say, " viewing the deed in the *form* of a mortgage." The deed is in the transcript, and is not in the *form* of a mortgage, but in the *form* of an ordinary deed of bargain and sale. So the jury did not mean what they say—that the deed was in the form of a mortgage. Then if we wish to know what they did mean, we must look at the history of the case, and at the evidence before them. Gregory professed to have bought the property. He did not pretend to have paid a dollar, but to have settled indebtedness due to himself to the amount of about two thousand eight hundred and fifty dollars, and to have executed his notes to McFarland for seven thousand one hundred and fifty dollars. These notes soon after the transaction, or indeed at the very time almost that they were delivered to McFarland, came back into the hands of Gregory (for safe keeping, he says), and were afterwards again delivered by Gregory to McFarland, if we are to take Gregory's word for it. But Gregory admits that he has not seen or heard of these notes since he delivered them to McFarland the second time. He has not paid, or been called on to pay, a cent since that time on these notes. It is also in proof, by one witness at least, that McFarland declared his intention to put this property in the hands of some one to hold for him until he could get time to pay or arrange with his creditors. It is also proved by the same witness that proposals were made to defendants to accept such a trust, and he was told that by so doing he could secure his debts (which were otherwise of doubtful value) against Dye & Smith and McFarland.

With all these facts before them, we think the jury came to the very sensible conclusion that Gregory only accepted the deed for the purpose of trying to secure his two thousand eight hundred and fifty dollars of doubtful debts; that the notes

which he executed, and which were immediately redelivered to him, were a mere sham—he did not intend to pay them. McFarland did not expect to collect or use the notes. They probably thought that the real transaction was, that this deed should stand as a mortgage or security for the two thousand eight hundred and fifty dollars, as between the parties, but should appear on the record as an absolute sale for ten thousand dollars, in order to hinder and delay creditors. If these were the views of the jury, they coincide fully with those entertained by this Court.

We think that the language complained of does not indicate that the jury misunderstood the facts, or reasoned falsely from the facts proved; but when they attempted to give a reason for their verdict, they failed to express themselves with clearness and precision. For this we think the verdict should not have been set aside. The order of the Court below, granting a new trial, is set aside and reversed. The original judgment of the Court below in favor of defendants is reinstated and affirmed.